**IN RE: Luis HERNANDEZ–ABREU, Debtor.**

**Sonia Mendizabal, Plaintiff,**

v.

**Luis Hernandez–Abreu, Defendant.**

**CASE NO. 12–13659–BKC–AJC**
**ADV. NO. 12–1401–BKC–AJC–A**

United States Bankruptcy Court,
S.D. Florida.

Signed January 9, 2014

Filed January 10, 2014

11. Bankr.Doc. 217, para. 5; Bankr.Doc. 806, paras. 1.47, 5.13.2.

12. Adv. Doc. No. 1, Ex. A.

Dennis A. Grossman, Great Neck, NY, for Plaintiff.

Robert C. Meyer, Miami, FL, for Defendant.

## Chapter 7
### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

A. Jay Cristol, Judge United States Bankruptcy Court

THIS CAUSE came before the Court for trial on October 23, 2013 upon a single count of the complaint, seeking to except from the Defendant's discharge, pursuant to 11 U.S.C. § 523(a)(2), a judgment for dental malpractice. Upon review of the evidence and observation of the candor and demeanor of the witnesses, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff was a dental patient of Defendant, a licensed dentist in Miami–Dade County, Florida. This relationship continued from 2003 through September of 2008. Things went well until 2007.

2. In February of 2007, Plaintiff used the services of Defendant for a root canal procedure on tooth number 7 ("Root Canal Procedure"). Work was done for the Root Canal Procedure from February, 2007 through March, 2007. Problems with the Root Canal Procedure ensued thereafter and subsequent treatment was administered by Defendant through June, 2008.

3. Dissatisfied with the treatment she was receiving from the Defendant, the Plaintiff sought treatment from another dentist who successfully resolved Plaintiff's complications.

4. Unbeknownst to the Debtor at the time, Defendant's professional liability insurance lapsed, for failure to pay premiums, on May 29, 2007.

5. Plaintiff subsequently sued Defendant on September 18, 2009 for malpractice in Miami–Dade County, Florida's Circuit Court. Defendant did not defend the complaint and a final judgment was entered on February 28, 2011, which awarded $225,000.00 for pain and suffering, $16,553.78 for lost wages, $9,720.17 for past medical expenses, and $4,200.00 for future medical expenses.

6. On February 15, 2012, Defendant filed a voluntary bankruptcy petition under Chapter 7, title 11, United States Code.

7. Plaintiff filed a two-count adversary complaint against Defendant on May 15, 2012. The second count was dismissed [DE 38], and the complaint proceeded to trial on the first count, seeking exception to the discharge under 11 U.S.C. § 523(a)(2).[1] It is not clear from the pleadings whether the action is brought under 11 U.S.C. § 523(a)(2)(A) or § 523(a)(2)(B); but, in paragraph 21 of the complaint, it appears Plaintiff is seeking exception to discharge under both 11 U.S.C. § 523(a)(2)(A) and (B).

8. There is no dispute that money was never lent by the Plaintiff to the Defendant.

---

1. **Section 523: Exceptions to discharge:** (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
 (B) use of a statement in writing—
 (i) that is materially false;
 (ii) respecting the debtor's or an insider's financial condition;
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 (iv) that the debtor caused to be made or published with intent to deceive.

9. There is no dispute that the issue before the Court does not involve a written statement concerning the Defendant's financial affairs.

10. There is no dispute that the relationship between the parties was strictly a professional relationship where Defendant provided dental services to the Plaintiff.

11. The conversations between the parties consisted of "small talk" or simple conversations about the handling of dental procedures, Plaintiff's pain following the Root Canal Procedure and such things as the weather.

12. Plaintiff does not assert that Defendant made any affirmative or express representations to deceive or misrepresent facts to the Plaintiff. Instead, the Plaintiff relies on Defendant's failure to disclose his personal health issues or professional insurance coverage matters to prove fraud.

13. Unlike the claim in *Kawaauhau v. Geiger,* 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) which was brought pursuant to section 523(a)(6) of the Code, the Plaintiff herein filed suit under 11 U.S.C. § 523(a)(2). The complaint asserts that Plaintiff's damages were a result of fraud by the Defendant because Defendant did not disclose his drug dependency and lapse in malpractice insurance.

## CONCLUSIONS OF LAW

First, because this action does not involve the use of any statement made in writing, the Court will disregard any claim for dischargeability under 11 U.S.C. § 523(a)(2)(B), and will analyze the evidence as it pertains to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides that a debt is nondischargeable under circumstances where the debt is, "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial conditions". False pretenses, false representation, and actual fraud represent three different concepts so the Court will evaluate Plaintiff's claim under each theory.

### (I) **False Representation**

 To establish a false representation under 11 U.S.C. § 523(a)(2)(A), the Plaintiff must prove that Defendant made a false or misleading statement, with the intent to deceive, thereby inducing the Plaintiff to turn over money or property to the Defendant. A "false representation" requires an expressed misrepresentation— oral or written—by the defendant. Silence, or lack of communication, cannot deliver proof by a preponderance of the evidence that Defendant made a false statement with the intent to deceive. The evidence presented in this case being all about non-disclosure, Plaintiff has failed to identify an express misrepresentation or false statement made by Defendant, either written or oral. *Hanft v. Church, (In reHanft, M.D., P.A.),* 315 B.R. 617 (S.D.Fla.2002). Plaintiff makes much ado about Defendant allowing his insurance to lapse and then lying about it to obtain a dental license. However, notwithstanding Plaintiff's testimony that she would not have gone to the Defendant if she had known his license had lapsed, at the time of the Root Canal Procedure, Defendant did in fact have a dental license and malpractice insurance. Plaintiff had been using the services of Defendant long before his insurance lapsed and the Court does not believe Defendant made any misrepresentations that were intended to deceive Plaintiff and cause her to turn over money or property. Defendant performed the Root Canal Procedure while licensed and insured; unfortunately for the Plaintiff, the Defendant's treatment was negligent. However, regardless of how negligent the

Defendant was, Plaintiff has failed to prove her claim for fraud through false representation.

### (II) Actual Fraud

██ Actual fraud under section 523(a)(2)(A), refers to common law fraud, and requires the Plaintiff to prove by a preponderance of the evidence that: (1) Defendant made a false representation with the purpose and intention of deceiving Plaintiff; (2) Plaintiff relied upon the Defendant's representation; (3) Plaintiff's reliance on the false representation was justifiably founded; and (4) Plaintiff was damaged as a result of the false statement. *See Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437 at 443, 133 L.Ed.2d 351 (1995); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Vickers,* 247 B.R. 530, 534 (Bankr.M.D.Fla. 2000); *Citizens Nat'l Bank v. Hunter (In re Hunter),* 229 B.R. 851, 858–59 (Bankr. M.D.Fla.1999). Actual fraud may be proven by a misrepresentation that is not only express but also implied, however "this section requires proof of actual fraud, not merely fraud implied in law." *De La Cruz v. Cohen (In re Cohen),* 185 B.R. 171, 177 (Bankr.D.N.J.1994) (citations omitted).

██ "Section 523(a)(2)(A) defines 'actual fraud' as 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" *Blacksmith Investments, LLC v. Woodford (In re Woodford),* 403 B.R. 177, 185 (Bankr.D.Mass.2009), aff'd, 418 B.R. 644 (1st Cir. BAP 2009). No evidence of deceit, artifice, trick, or design involving direct and active operation of the mind was established by this Plaintiff at trial. The Plaintiff did not prove that Defendant made a false representation or acted in any way to induce the Plaintiff to advance money, property, services or credit to the Defendant. No evidence was presented to show that Defendant acted in a culpable manner to constitute "actual fraud." To the contrary, the evidence supports that the Defendant treated the Plaintiff numerous times both before and after the Root Canal Procedure. Plaintiffs payments were for work performed, albeit negligently.

While actual fraud may be proven by an implied misrepresentation, a plaintiff must prove that the defendant had no intention of performing or did not have a reasonable basis to believe that he could perform at the time the promise was made. The Plaintiff in this case has failed to prove any implied misrepresentation. Plaintiff has not proven that Defendant did not intend to or did not have a reasonable basis to believe that he could perform his obligations to the Plaintiff. He was a trained dentist with the knowledge and ability to perform the Root Canal Procedure. The evidence did not prove Defendant incapable of performing his dentistry—whether as a result of drug use or lack of insurance.

### (III) False Pretenses

██ A cause of action for false pretenses "involves an implied misrepresentation or conduct intended to create and foster a false impression." *American Honda Finance Corp. v. Ippolito (In re Ippolito),* 2013 WL 828316 (Bankr. E.D.N.Y.) (citations omitted). Plaintiff must prove (1) the Defendant made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the Defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the Defendant. *Id.* Additionally, where a duty to disclose exists, silence may constitute false pretenses. *Grad v. Behnam (In re Behnam),* 2005 Bankr.LEXIS 435, *20 (Bankr.

E.D.N.Y 2005). "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation...." *ATT Univ Card Services v. Mercer (In re Mercer),* 246 F.3d 391, 404 (5th Cir.2001). However, courts commonly refrain from creating duties where they do not arise. *See, e.g., Park v. Carino (In re Carino),* 2010 WL 1049989 (Bankr.HI).

 The testimony and evidence is devoid of any affirmative misrepresentations made by the Defendant. Nonetheless, Plaintiff argues the Defendant's silence or omissions [regarding his drug use or lapse in insurance coverage] constitutes "fraud" giving rise to an exception to discharge. The Court does not agree with the Plaintiff. In this case, the Plaintiff has not proven the Defendant was under any duty to disclose facts regarding either his drug use or his business' fiscal operations with the Plaintiff, and the Court does not believe there is such a duty running from a dentist to his patient.

The Court does not believe the failure to disclose a drug dependency necessarily constitutes actual fraud under the circumstances herein, as defined under 11 U.S.C. § 523(a)(2)(A). First, there is no duty to disclose such information. No statute or legal case was presented to prove that illnesses, weaknesses or impairments must be disclosed by medical professionals to their patients. Other courts confronted with this issue have determined that a doctor does not have a duty to disclose a drug dependency. The Georgia Supreme Court, in a nonbankruptcy matter, determined that the failure of a doctor to disclose his drug dependency to a patient did not amount to "fraud." *Albany Urology Clinic, PC v. Cleveland,* 272 Ga. 296, 528 S.E.2d 777 (2000). That court opined:

> The Court of Appeals also erred in ruling that [doctor's] non-disclosure of his cocaine use at the time of [patient's] treatment entitled the latter to file a fraud claim seeking damages. Because, as explained above, [doctor] was not under a duty to make any disclosures regarding his personal life factors, the failure to make such disclosure cannot logically support a claim for fraudulent concealment or nondisclosure.

*Albany Urology Clinic,* 528 S.E.2d at 780. The court then concluded "[a] full and adequate remedy for [patient's] injuries in this case is already provided by existing law—the right to sue [doctor] for professional negligence." *Id.*

The public policy reasons cited in *Albany Urology Clinic,* 528 S.E.2d at 781–782 are adopted by this Court:

> We also note that there are compelling public policy reasons that militate against creating an independent cause of action for fraud and battery based upon a professional's failure to disclose life factors that might be detrimental to the rendering of services to patients or clients. First among these is the impossibility of defining which of a professional's life factors would be subject to such a disclosure requirement. Indeed, in arguing before this Court, Cleveland concedes that because every situation is different, and because every patient or client has unique sensibilities, it would be impossible to say what a professional is required to disclose in any given professional relationship. This concession highlights the difficulty of ascertaining standards that would guide both professionals and their clients if such a new disclosure requirement existed, and underscores the fact that such standards would, in large part, be based upon a plaintiff's subjective beliefs and standards.

> Defendant's failure to disclose personal mental or physical issues—most particularly his addiction—does not amount to

"actual fraud." For the reasons recited above, the Court believes Defendant was under no duty to disclose such information. Therefore, Defendant's failure to share the information with the Plaintiff is not actionable.

Moreover, the failure to disclose the lapsing of the malpractice insurance does not, of itself, constitute "fraud" under 11 U.S.C. § 523(a)(2)(A). Plaintiff attempts to support her argument with cases which have held a medical malpractice judgment against a doctor to be nondischargeable under 11 U.S.C. § 523(a)(2). *Abrahamson v. Doyan (In re Doyan)*, 204 B.R. 250 (Bankr.S.D.Fla.1996), *Hanft, M.D.,* 315 B.R. at 617, and *In re Berman,* 154 B.R. 991 (Bankr.S.D.Fla.1993). Although the cases presented support the theory that the lack of insurance may be a factor considered in determining "fraud" as defined under 11 U.S.C. § 523(a)(2)(A), those courts did not hinge their decisions on that fact alone. The Court believes those cases are distinguishable from this case for many reasons.

All three cases cited by Plaintiff involve physicians, not dentists. The Florida regulations for the practices differ. Although the regulations for dentists are similar to the regulations for physicians, such regulations are not identical. Each case cited had *other* relevant factors to support the denial of the doctor/debtor's discharge.

In *Hanft,* the physician practiced on the patient *after* his license lapsed. He was practicing medicine without a license.

"The bankruptcy court found that Appellant knew his medical license was inactive . . . [and the doctor] made a conscious and deliberate decision to stop paying his medical license renewal fees . . ." *Hanft* at 621. In this case, there is no dispute that the Defendant was licensed at the time of the Root Canal Procedure. When complications arose after the procedure from an infection, the Defendant negligently administered treatment, during which he allowed his license to lapse.

*Berman* involved a physician who used television ads and disguised print advertising as journalistic articles to boast his credentials. The Court concluded that, ". . . debtor's marketing techniques apparently were effective, [and] the court finds that they also were deceptive." *Berman* at 1001. No evidence of such (un)professional advertising exists in this case. Defendant did not affirmatively make any representations to deceive Plaintiff about his credentials.

In *Doyan,* the physician deliberately made false representations. He had no associations with and no surgical privileges at any hospitals, he attempted a hazardous procedure without explaining the risks to the patient, and he offered his services at a reduced cost to induce the patient to agree to the medical procedure. The Court, when reviewing these factors and the physician's failure to post a disclosure of "no insurance" concluded, ". . . the Debtor's failure to post the disclosure mandated by Fla. Stat. 458.320 [2] when he chose to dis-

---

**2.** That statute states, "A licensee who meets the requirements of this paragraph shall be required either to post notice in the form of a sign prominently displayed in the reception area and clearly noticeable by all patients or to provide a written statement to any person to whom medical services are being provided. Such sign or statement shall state: 'Under Florida law, physicians are generally required to carry medical malpractice insurance or otherwise demonstrate financial responsibility to cover potential claims for medical malpractice. YOUR DOCTOR HAS DECIDED NOT TO CARRY MEDICAL MALPRACTICE INSURANCE. This is permitted under Florida law subject to certain conditions. Florida law imposes penalties against noninsured physicians who fail to satisfy adverse judgments arising from claims of medical mal-

continue his medical malpractice insurance was an intentional effort by the Debtor to avoid or deflect inquiry regarding his financial status." *Doyan* at 258. The facts of the case before this Court do not include any of these claims. More importantly, the cited physician statute in *Doyan* does not apply to Defendant—a dentist.

■■■ The practice of medicine by a physician is governed by Chapter 458 of the Florida Statutes. The purpose of Chapter 458 is to ensure the safety of the citizens who seek care from those licensed to practice medicine in the state of Florida. Fla. Stat. § 458.31. The law provides for penalties for failure to comply with the various provisions of Chapter 458. Fla. Stat. § 458.327. In particular, Chapter 458 requires a physician have malpractice insurance or have a bond or irrevocable letter of credit for $ 100,000.00 per claim with a minimum aggregate available amount of $300,000.00. Section 458.320(1)(c), Fla. Stat., requires disclosure by the physician to the patient. It is a misdemeanor for any physician to conceal information or violate Fla. Stat. § 458.327(2)(a). Thus, for a medical doctor who is regulated by statute, failure to disclose the status of malpractice insurance may give rise to a claim for false pretenses.

Dentistry, on the other hand, is governed by Chapter 466 of the Florida Statutes. That chapter, although similar to the chapter governing medical physicians, has distinctions. Unlike the physician statute, there is no financial responsibility provision in Chapter 466. The requirement for financial responsibility arises in the licensing provisions of the Florida Administrative Register and the Florida Administrative Code, but the failure to comply is not a misdemeanor for a dentist. Most notably, the statutes regulating dentistry do not require disclosure by a dentist to patients about the decision of either purchasing insurance or having a letter of credit.

The physician's duty to disclose the failure to carry insurance is mandated by Florida statute; the dentist has no similar duty. The Administrative Code does not require Defendant to make a similar disclosure to patients. Without such duty, Defendant, a dentist, committed neither "actual fraud" nor "false pretenses."

■■■ Finally, the argument that, as a policy matter, malpractice judgments should be excepted from discharge, at least when the debtor acted recklessly or carried no malpractice insurance, has already been rejected. *Kawaauhau*, 523 U.S. at 64, 118 S.Ct. 974 (addressing section 523(a)(6), the Court rejected the concept that not having malpractice insurance, by itself, warrants non-dischargeability). Although Congress may so decide to except such a debt from discharge, it has not yet done so. And contrary to the Plaintiffs contentions, "general dishonesty" regarding insurance coverage and substance addiction is not the basis of a claim under section 523(a)(2).

The Court is not without sympathy for the unfortunate victim of this dentist's malpractice. If the dental code were the same as the physicians code, perhaps the case would have been closer to the facts in *Doyan*. Counsel for the Plaintiff is to be commended for his creative effort in trying to help his client find a way around the Supreme Court decision in *Kawaauhau*. It may be appropriate for the legislature to require dentists to disclose their malpractice insurance status or for the Florida Board of Dentistry to consider creating a fund, much like that established by The Florida Bar for victims of a lawyer's mis-

practice. This notice is provided pursuant to Florida law.' "

appropriation or embezzlement (the "Clients' Security Fund"), to protect dental patients from malpractice where there is no insurance and no other means to compensate the injured parties.

For the foregoing reasons, the Court reluctantly finds in favor of the Defendant. It is

ORDERED AND ADJUDGED that upon the single count of the complaint seeking to except Plaintiff's malpractice judgment against the Defendant from discharge pursuant to 11 U.S.C. § 523(a)(2), the Court finds and determines that the debt represented by said malpractice judgment is DISCHARGED. A final judgment will be entered simultaneously herewith.